**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTER ROCK, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:12-CV-00688-JCH |
| | ) | |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HAMMER & STEEL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**TRIAL BRIEF OF DEFENDANT, HAMMER & STEEL, INC.**

COMES NOW Defendant, Hammer & Steel, Inc., and for its Trial Brief, submits the following:

**I.  FACTS**

The parties entered into three oral rental agreements for Drills 117, 108 and 48.

Drill 48 was re-rented to Sun Electric in Texas.  The terms were month-to-month. Sun Electric rented the drill for one month, then terminated the lease.  Hammer & Steel notified Center Rock that the lease had been terminated but neither Center Rock nor Hammer & Steel made immediate arrangements for the return of Drill 48 from Texas to Center Rock in Pennsylvania.  The parties oral agreement did not include any discussion about who would make the arrangements for return of Drill 48 once the lease term ended.

Center Rock had made the arrangements for transportation to and from the project sites on all prior occasions.  There had been only one return from a

project site, the return of a 30 Inch Drill from Oneidaview in New York, which was replaced with the first 36 Inch Drill (Drill 117).

The oral agreements for Drills 117 and 108 were rent-to-purchase agreements under which Hammer & Steel would be credited with one hundred percent of the first month's rent and eighty percent of the rent paid for every month thereafter.  Hammer & Steel had rent-to-purchase agreements with its customer, Oneidaview Piledriving, for both drills.

The total price to purchase Drill 117 ($96,960.00) and the ratchet drilling attachment $5,900.00) and breakout bench ($16,400.00) was $119,260.00 less a credit of $6,700.00 for 6 LP bits, for a net purchase price of $112,560.00.

The total price to purchase Drill 108 ($96,960.00) and the ratchet drilling attachment ($5,900.00) totaled $102,860.00, less a credit for 6 LP bits ($4,320.00) for a net purchase price of $98,540.00.

By April 2011 Hammer & Steel had made nine monthly payments on Drill 117 which, after deducting the above credits, resulted in an overpayment of about $960.00.

A meeting was held on March 11, 2011 during which Hammer & Steel was presented with one-page "buy-out" schedules reflecting the amount required to complete the purchase of Drills 108 and 117.  At that time the January and February invoices for both drills were not paid.  The "buy-out" schedules did not list a March invoice for either drill.

After the March 11, 2011 meeting Hammer & Steel paid two additional invoices for both drills, the first payment on March 15, 2011 and the second

payment on April 7, 2011.  Those payments referenced the February and March invoices for the two drills, instead of the January and February 2011 invoices.

The March 15 and April 7, 2011 payments resulted in an overpayment of about $960.00 on Drill 117 and a balance to complete payment for both drills of about $21,159.20.

By April 7, 2011 Hammer & Steel had paid Center Rock $255,378.59 for the rental of Drills 117 and 108.

The parties dispute whether Hammer & Steel notified Center Rock that it wished to purchase Drills 117 and 108, both before March 11, 2011 and on March 11, 2011.  It is undisputed that Hammer & Steel's ultimate customer, Oneidaview Piledriving, notified Center Rock that it wished to buy the two drills under its rent-to-purchase agreement with Hammer & Steel, during September 2010 and again on about March 11, 2011.

After the April 7, 2011 payment, Center Rock refused to acknowledge that Drill 117 had been purchased or that the balance to complete the purchase of both drills was approximately $20,000.00.

## II.  THE UNSPOKEN TERMS OF THE THREE ORAL AGREEMENTS ARE ESTABLISHED BY THE COURSE OF DEALING AND COURSE OF PERFORMANCE BY THE PARTIES PRIOR TO AND UNDER THE AGREEMENTS

There was no discussion between the parties about any conditions for purchasing Drills 117 and 108 other than crediting one hundred percent of the rent paid for the first month and eighty percent of the rent paid for every month thereafter.  Hammer & Steel had completed one previous rent-to-

purchase agreement with Center Rock during 2009, when Hammer & Steel was permitted to complete the purchase of a Hydro-jaw for the agreed upon balance, under the rent-to-purchase terms, two months after the rental period covered by the last monthly payment ended.

When considering an oral contract, ascertainment of its terms that are in dispute is a fact question.  The legal effect of the terms, once ascertained, is a question of law.  Whether there exists a course of dealing between the parties that discloses a course of performance that will establish the terms of the contract is a question of fact.  <u>Zolman vs. Semo Produce, Inc.</u>, 875 S.W.2d 605, 611 (Mo. App. 1994); <u>School Dist. of Springfield R-12 ex rel. Midland Paving Co. vs. Transamerica Ins. Co.</u>, 633 S.W.2d 238, 247 (Mo.App. 1982); <u>Environmental Waste Management, Inc. vs. Industrial Excavating & Equipment, Inc.</u>, 981 S.W.2d 607, 611 (Mo.App. 1999).

<u>Zolman vs. SEMO Produce, Inc.</u> also discusses the Uniform Commercial Code, RSMo. § 400.1-205(1) concerning course of dealing and § 2-208(1) concerning course of performance, stating that "course of dealing" and "course of performance" are limited literally to the conduct of the parties prior to and under the agreement.  <u>Zolman vs. SEMO Produce, Inc.</u>, 875 S.W.2d 605, 610 (Mo.App. 1994).  Post-performance conduct is not an issue in the case at bar.

Center Rock made the arrangements for transportation of Drill 48 from its offices in Pennsylvania to Hammer & Steel's customer, Sun Electric, in Texas.  Center Rock also made the arrangements for delivery of the 30 Inch Drill (which was deemed to be too small) to Oneidaview Piledriving in New York,

the return of the 30 Inch Drill to Pennsylvania, the transportation of the replacement 36 Inch drill (Drill 117) to New York and transportation of the second 36 Inch drill (Drill 108) to new York.  Center Rock also made the arrangements for shipment (hand delivery) of the Hydro-jaw to Hammer & Steel's customer in New York during 2009 and also made the arrangements for transportation of a number of other smaller items of equipment purchased and/or rented by Hammer & Steel during 2009.

On all previous occasions, before the return of Drill 48 from Texas, Center Rock made the arrangements for transportation, then billed Hammer & Steel for the expense.

There was no discussion between Hammer & Steel and Center Rock about who would be responsible for arranging for the return of Drill 48 upon completion of the rental term.

The course of dealing and course of performance between Hammer & Steel and Center Rock established that Hammer & Steel could complete the purchase of Drills 117 and 108 by making sufficient monthly rental payments to cover the purchase price with credits of one hundred percent of the rent for the first month and eighty percent of the rent paid for every month thereafter.

The course of dealing and course of performance between Hammer & Steel and Center Rock established that Center Rock was responsible for making the arrangements for the return of Drill 48 from Texas after completion of the rental term of one month.

**III.  CENTER ROCK ANTICIPATORILY BREACHED THE AGREEMENTS FOR DRILLS 117 AND 108 BY REFUSING TO ACKNOWLEDGE THAT HAMMER & STEEL HAD OVERPAID FOR DRILL 117 AND BY REFUSING TO ACCEPT ABOUT $20,159.20 TO COMPLETE THE PURCHASE OF DRILL NO. 108**

Center Rock's refusal to acknowledge that Hammer & Steel overpaid for Drill 117, and its refusal to accept about $20,159.20 to complete the purchase of Drill 108 constitutes anticipatory breaches of the oral rent-to-purchase agreements, relieving Hammer & Steel from any further obligation to perform until the rights of the parties are determined.

G.H.H. Investments, LLC vs. Chesterfield Management Associates, L.P., 262 S.W.3d 687, 695 (Mo. App. 2008) held:  "Missouri law recognizes the doctrine of anticipatory breach by repudiation and a party to a contract repudiates that contract by manifesting by words or conduct, a positive intention not to perform" citing Jetz Serv. Co. vs. Boltros, 91 S.W.3d 157, 163 (Mo. App. 2002).

## CONCLUSION

Hammer & Steel overpaid for the purchase of Drill 117 and should be allowed to complete the purchase of Drill 108 upon the payment of $20,159.20 to Center Rock, which Hammer & Steel has offered to pay on numerous occasions since March 11, 2011.  Center Rock was responsible for making the arrangements for the return of Drill 48 from Texas.  It is responsible for any delay in the return of that drill and related equipment.

/s/ David M. Duree
David M. Duree, MBE 21003
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
O'Fallon, IL 62269
Tel:   314-621-5751
Fax:  314-621-0322
Email:  law@dmduree.net
*Attorney for Defendant, Hammer & Steel, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2013 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system, upon the following:

**afrench@sandbergphoenix.com**
**toleary@sandbergphoenix.com**
Mr. Aaron D. French
Mr. Timothy J. O'Leary
Sandberg Phoenix, PC
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-1313
*Attorneys for Defendant and Counter-Claimant, Center Rock, Inc.*

**vbarbera@bcbrm.com**
Mr. Vincent J. Barbera
Barbera and Clapper, LLP
146 W. Main Street
Somerset, PA 15501-0775
*Attorney for Counter-Claimant, Center Rock, Inc.*

/s/ David M. Duree
David M. Duree, MBE 21003
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
O'Fallon, IL 62269
Tel:   314-621-5751
Fax:  314-621-0322
Email:  law@dmduree.net
*Attorney for Defendant, Hammer & Steel, Inc.*
